UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTOPHER HANSEN,        )<br>                            )<br>     Plaintiff,            )<br>                            )<br>     v.                     )<br>                            )<br>F/V SPICY LADY, O.N. 98982857, HER )<br>ENGINES, MACHINERY,        )<br>APPURTENANCES, ETC., in rem, et al., )<br>                            )<br>     Defendants.           )<br>_____ ) | CASE NO. C12-1657-MAT<br><br>ORDER RE: MOTION FOR PARTIAL SUMMARY JUDGMENT |

INTRODUCTION

Defendants Spicy Lady, Inc., Collin L. Martens, and Collin B. Martens move for partial summary judgment in this admiralty matter and request oral argument. (Dkt. 26.) They seek dismissal of plaintiff Christopher Hansen's *in personam* claims against Collin B. Martens, claims for maintenance while plaintiff served as a crewmember on other vessels, and plaintiff's negligence and unseaworthiness claims. Plaintiff opposes the motion. (Dkt. 34.) Counsel for plaintiff also requests the Court defer consideration of the motion until he is able to contact

ORDER
PAGE -1

and confer with plaintiff, who was working on a vessel in the Bering Sea until around the end of August 2013. (Dkt. 36, ¶13.)

The Court finds no basis for deferring the motion and no need for oral argument. The Court concludes that plaintiff's claims against Collin B. Martens are subject to dismissal, but that defendants otherwise fail to demonstrate their entitlement to summary judgment.

## BACKGROUND

This matter proceeds in admiralty. Plaintiff alleges he sustained a low back injury on or about July 27, 2010 while operating the seine skiff for the F/V SPICY LADY during the commercial purse seine salmon fishery in Southeast Alaska. (Dkt. 21.) As explained by defendants, "purse seining" is a commercial fishing technique involving a net released and towed by a skiff. Plaintiff, who returned to work on the F/V SPICY LADY for a portion of the summer of 2011, alleges defendant failed to pay him the full crewshares due him in connection with the 2010 and 2011 fisheries, or to sufficiently pay remedies of maintenance, cure, and unearned wages guaranteed by maritime law. The causes of action included in plaintiff's amended complaint include negligence under general maritime law and the Jones Act, unseaworthiness, wrongful refusal to pay maintenance, cure, and unearned wages, breach of contract, and foreclosure of maritime lien. (*Id*.) He also seeks punitive damages. (*Id*.) Additional facts relevant to the consideration of the pending motion for partial summary judgment are addressed within the context of the arguments discussed below.

## DISCUSSION

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

ORDER
PAGE -2

R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The Court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp.*, 477 U.S. at 325.  The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden then shifts to the nonmoving party to establish a genuine issue of material fact.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 585.  "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original). Also, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Likewise, the nonmoving party "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

A.     <u>Claims Against Collin B. Martens</u>

The Court previously permitted plaintiff to amend his complaint to include Collin B. Martens (hereinafter "Collin, Jr.") and Collin L. Martens (hereinafter "Collin, Sr.") as defendants, rather than "Collin Martens," as named in the original complaint. (Dkt. 20.) Plaintiff premised this proposed amendment on his belief that both Collin, Jr. and Collin, Sr. served as employers and owners of the F/V SPICY LADY. While defendants opposed the motion as futile, contending Collin, Jr. was neither an employer nor vessel owner, the Court, at the time, found a determination of the issue premature.

More recently, however, the Court denied plaintiff's motion to compel banking and accounting records he maintained would prove that Collin, Jr. and Collin, Sr. have used defendant Spicy Lady, Inc. as an *alter ego* of themselves to avoid personal responsibilities, and to prove that Collin, Jr. is a co-owner of defendant F/V SPICY LADY. (Dkt. 49.) The Court noted defendants' admission that Collin, Sr. is the owner of the F/V SPICY LADY and that Spicy Lady, Inc. served as plaintiff's employer, and their continued assertion that Collin, Jr. had no ownership in the F/V SPICY LADY, or the employer Spicy Lady, Inc.

ORDER
PAGE -4

The Court further noted that plaintiff's response to the motion for partial summary judgment reveals he continues to base his theories as to vessel ownership and the identity of his employer on his personal belief and a sentence in a letter from an attorney he construes as identifying Collin, Jr. as a part owner of the F/V SPICY LADY. (*See* Dkt. 34 and Dkt. 38, Ex. A ("This letter is to advise you that I represent Mr. Collin L. Martens, part owner of the F/V SPICY LADY, along with his son, Collin B. Martens, who was the master of the F/V SPICY LADY in 2010 and 2011, and Spicy Lady, Inc., the charterer and operator of the F/V SPICY LADY, and the employer of Mr. Chris Hansen.")) The author of the letter in question attests that plaintiff's reading of the pertinent language is wrong, and provides an Abstract of Title for the F/V SPICY LADY obtained from the United States Coast Guard National Vessel Documentation Center showing the vessel to be owned by only Collin, Sr. and a Mr. Ralph Collins. (Dkt. 38, ¶ 2 and Ex. B.) Other documents submitted include tax forms identifying Collin, Sr. and his wife as owning 100 percent of the stock in Spicy Lady, Inc. (Dkt. 39, Ex. 1), a declaration from Collin, Sr. attesting to his sole ownership of the F/V SPICY LADY, his leasing of that vessel to Spicy Lady, Inc., and that he is a shareholder and the president of Spicy Lady, Inc. (Dkt. 27), and portions of a transcript of the deposition of Collin, Sr. providing testimony entirely consistent with his declaration (Dkt. 36-18). The Court, in light of the above, found the discovery requests in question overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and no basis for granting the motion to compel.

The Court now addresses defendants' motion for summary judgment as to plaintiff's *in personam* claims against Collin, Jr. Defendants contend, and plaintiff does not dispute, that

ORDER
PAGE -5

the applicable law sets forth causes of action only against an employer or vessel owner.  *See*, *e.g.*, *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 407-08, 415 (2009); *The Osceola*, 189 U.S. 158, 175 (1903), *superceded by statute on other grounds as stated in Atl. Sounding Co.*, 557 U.S. 404; *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 790-91 (1949).   Based on the same facts considered in the denial of plaintiff's motion to compel, the Court finds no basis for the inclusion of Collin, Jr. as a defendant in this matter.  Plaintiff fails to provide any support for his assertion that Collin, Jr. served as his employer or had any ownership in the F/V SPICY LADY.  Neither his bare assertion as to his belief, nor his interpretation of an introductory statement in a letter from counsel as to representation serves to set forth a genuine issue of material fact.   In contrast, the evidence presented supports the conclusion that Collin, Jr. had no ownership interest in either the employer or vessel subject to suit in this matter.   The Court, as such, finds defendants entitled to partial summary judgment, and plaintiff's claims against Collin, Jr. subject to dismissal.

B.    <u>Right to Maintenance While Working on Other Vessels</u>

When a seaman is injured in the service of his vessel, the shipowner has an obligation to pay maintenance (room and board), cure (medical expenses), and unearned wages from the onset of injury until the end of the voyage.  *Vaughan v. Atkinson*, 369 U.S. 527, 531-33 (1962), and *Lipscomb v. Foss Maritime Co.*, 83 F.3d 1106, 1109 (9th Cir. 1996).   The entitlement to maintenance and cure continues until the seaman reaches "maximum cure" – a recovery as complete as the injury allows.  *Permanente S.S. Corp. v. Martinez*, 369 F.2d 297, 298-99 (9th Cir. 1966) (obligation to furnish maintenance and cure "continues until the seaman achieves maximum recovery; that is, until the seaman is well or his condition is found to be incurable.")

The Court resolves any ambiguities or doubts as to the seaman's right to receive maintenance and cure in favor of the seaman. *Vaughan*, 369 U.S. at 532.

Defendants argue a vessel owner is not obligated to pay maintenance when a seaman is fit enough to return to work, by his own choice and to his accustomed trade, for periods of time when the seaman's food and lodging is provided by another vessel owner. *See Dowdle v. Offshore Express, Inc.*, 809 F.2d 259, 266 (5th Cir. 1987) (finding no reason to award maintenance for periods in which sustenance provided by others); *Koslusky v. United States*, 208 F.2d 957, 958 (2d Cir. 1948) (affirming maintenance award excluding period of time seaman serving on another vessel); *Crow v. Cooper Marine & Timberlands Corp.*, 657 F. Supp. 2d 1248, 1252, 1260-61 (S.D. Ala. 2009) (applying *Dowdle*).

Defendants point to plaintiff's testimony he was returning to work as a commercial fisherman in Alaska in June through August of 2013 (Dkt. 29 at 8-11), and the fact that he was employed as the captain of the F/V SABRA RAEAN for the Washington coastal dungeness crab fishery beginning sometime between the first and second weeks of December 2012, through March 28, 2013 (*id.* at 7, 12, 13). They state they provided plaintiff with maintenance as of August 20, 2012 through June 15, 2013, at a rate of $35.00 per day. (Dkt. 28, ¶3.)

Plaintiff notes the recognition of the United States Supreme Court that a seaman is not barred from recovering maintenance and cure when he is "'forced by financial necessity to return to his regular employment.'" *Vaughan*, 369 U.S. at 533-34 ("It would be a sorry day for seamen if shipowners, knowing of the claim for maintenance and cure, could disregard it, force the disabled seaman to work, and then evade part or all of their legal obligation by having it reduced by the amount of the sick man's earnings.") He maintains the duty to pay

maintenance continues until the injured seaman reaches maximum medical cure, not upon a return to work. *See Wood v. Diamond M Drilling Co.*, 691 F.2d 1165, 1170-71 (5th Cir. 1987) (finding a seaman, who returned to work in a clerical position and had not been certified fit for duty, entitled to maintenance through maximum cure, regardless of whether economic necessity caused return to work; "Though we agree . . . Wood is not entitled to a windfall, we do not believe that, under *Vaughan*, he should be subject to a forfeiture of his right under the law for having returned to work.")

Plaintiff denies his occasional employment on other vessels occurred as a result of his own choice. He maintains his recourse to temporary employment resulted from defendants' failure to provide the full measure of remedies owed, including maintenance, cure, and unearned wages. (*See* Dkt. 36-22 at 5-6, 34-42 (plaintiff testified his rent is $750.00 a month, he has no health insurance and was left to pay medical expenses after his injury, leading to collection when he could not afford to pay, and that defendants refused his requests for assistance with medical bills).) Plaintiff contends defendants paid only for an initial clinic visit shortly after he sustained the injury, failed to pay him unearned wages, and only began to pay him maintenance and cure once he retained legal counsel and threatened a lawsuit. He further contends defendants failed to investigate or take any steps to determine his actual living expenses, and that the unreasonable amount of maintenance paid – $35.00 per day instead of his actual expenses of $55.00 per day – resulted in a shortfall requiring his return to work.

As held by the Ninth Circuit Court of Appeals, although evidence of recovery, employment aboard another vessel "is not conclusive[]" on the question of a prior vessel's obligation to furnish maintenance and cure. *Martinez*, 369 F.2d at 298-99 (noting the "ample

ORDER
PAGE -8

authority holding that if the seaman can establish that he had not in fact fully recovered, his return to work does not terminate his right to maintenance and cure from the vessel in whose service he was injured or became ill.") (cited cases omitted).  Consideration of whether the seaman was compelled to return to work due to the refusal to furnish maintenance and cure, or whether the employment fell outside of seaman's work, "may affect the weight which the seaman's return to work should be given in determining when the point of maximum recovery was attained[,]" or be relevant for other purposes.  *Id*. at 299.  *See also Crow*, 657 F. Supp. 2d at 1252, 1260-61 ("[W]hen a seaman is 'fit enough to work by his own choice in his accustomed trade, there is no reason to award him maintenance for periods in which his sustenance was provided by others,' *if 'such employment is by the seaman's choice and not a result of the original employer's willful failure to perform its maintenance and cure obligations*.'") (quoting *Dowdle*, 809 F.2d at 266) (emphasis added).  It remains, however, that "a seaman's return to employment does not invariably and as a matter of law terminate the maintenance and cure obligation of the prior maritime employer." *Martinez*, 369 F.3d at 298-99.  *Accord Walsh v. F/V Arctic Baruna I*, No. C04-2453-JLR, 2006 U.S. Dist. LEXIS 100434 at *5-8 (W.D. Wash. Aug. 8, 2006) (finding same and concluding: "That Mr. Walsh returned to work and rescheduled his original surgery date of June 2003 is of no consequence. By not processing his claim, Arctic Baruna effectively forced Mr. Walsh back into employment. Arctic Baruna cannot now claim it is exempt of its obligation during this time period.") (*citing Martinez*, 369 F.2d at 299).  The issue of when the obligation of maintenance and cure ends is a question of fact.  *In re Complaint of Robbins*, 575 F. Supp. 584, 587 (W.D. Wash. 1983) ("A seaman's employment on another vessel is evidence that he has fully

recovered, but it is not conclusive. A seaman may still show that he has not reached a point of maximum cure despite his employment.") (citing *Martinez*, 369 F.2d at 299).

In this case, plaintiff alleges he sustained an injury on the F/V SPICY LADY on July 27, 2010. However, as defendants concede, the payment of maintenance and cure did not commence until August 20, 2012. Other evidence in the record reveals that the initiation of maintenance and cure payments came after plaintiff made a demand (*see* Dkt. 38, Ex. A (May 31, 2012 letter from counsel for defendants responding to demand letter)), and was followed shortly thereafter by the filing of this lawsuit (*see* Dkt. 1 (complaint filed September 25, 2012)).

Plaintiff's employment on other vessels during the time period in which he received maintenance from defendants is certainly a relevant factor in the Court's consideration of plaintiff's claims. *See*, *e.g.*, *In re Complaint of Robbins*, 575 F. Supp. at 587 (finding seaman eligible for maintenance "except for those periods when he was given food and lodging at no cost to himself[,]" including "the time he spent fishing (where his room and board were provided by the operator of those ships[)].") However, the mere fact of that employment is not conclusive as to the determination of when defendants' obligation to provide maintenance and cure ceased. *Martinez*, 369 F.2d at 298-99. Also relevant to the Court's consideration is the question of whether plaintiff began that employment of his own volition, or as a result of a failure on defendants' part to provide remedies. *Cf. Dowdle*, 809 F.2d at 266 ("Dowdle was certified as fit for duty, *did not ask for maintenance payments, and employed himself with another shipowner of his own volition*.") (emphasis added). The Court further finds insufficient detail provided by the parties on this issue, including confirmation of the precise dates of plaintiff's employment on other vessels.

ORDER
PAGE -10

In light of the above, the Court, at this time, finds premature a determination as to the payment of maintenance during periods of plaintiff's other employment. Defendants are, therefore, not entitled to partial summary judgment on this issue.

C.     Negligence and Unseaworthiness Claims

The Jones Act provides for a negligence claim for injuries sustained by a seaman in the course of employment. 46 U.S.C. § 30104. A Jones Act negligence claim requires a showing that an employer breached the duty to provide a safe work environment, the employer was aware of the unsafe condition, and there is a causal link, however slight, between the breach and the seaman's injury. *Ribitzki v. Canmar Reading & Bates, Ltd.*, 111 F.3d 658, 662-64 (9th Cir. 1997) ("The 'quantum of evidence necessary to support a finding of Jones Act negligence is less than that required for common law negligence,. . . and even the slightest negligence is sufficient to sustain a finding of liability.'") (quoted source omitted). *Accord In re Hechinger*, 890 F.2d 202, 208 (9th Cir. 1989) (a seaman must demonstrate his employer's negligence and that the "negligence was a cause, however slight, of his injuries.")

Under general maritime law, a vessel owner has an absolute duty to provide and maintain a seaworthy vessel. *Mitchell v. Trawler Racer*, 362 U.S. 539, 550 (1960). "A seaworthy ship is one reasonably fit for its intended use." *Ribitzki*, 111 F.3d at 664 (citing *Mitchell*, 362 U.S. at 550). To establish unseaworthiness, a seaman must show the unseaworthy condition was a substantial factor in causing the injury. *Id*. at 664-65. "A vessel's unseaworthiness might arise from any number of individualized circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The method of loading her cargo, or the manner of its stowage, might be improper." *Morales v. Galveston*, 370 U.S.

ORDER
PAGE -11

165, 170-71 (1962).  An "unsafe method of operation" may, therefore, constitute unseaworthiness.  *Mohamed v. F/V N. Victor*, No. C05-2019JLR, 2007 U.S. Dist. LEXIS 679 at *13-14 (W.D. Wash. Jan. 3, 2007) (citing *Morales*, 370 U.S. at 170-71).

Defendants seek the dismissal of plaintiff's negligence and unseaworthiness claims. They point to plaintiff's testimony he injured his low back while standing in a skiff retrieving a towline from the water, a towline 150-feet long and comprised of a three-strand polypropylene rope, one and a half to two inches in diameter, that he felt a sudden pain while pulling the line over the skiff's transom (stern), and that he described this task to a healthcare provider as an activity he had performed "probably 1000 times" before.  (Dkt. 29 at 14-18, 20.)  They aver there is nothing unreasonably dangerous about the task performed and, therefore, no breach of their duty of "ordinary prudence under the circumstances."  *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338 (5th Cir. 1997).  Defendants further maintain that, without any affirmative evidence showing the alleged failure to provide a seaworthy vessel, they are entitled to summary judgment on plaintiff's unseaworthiness claim.

Plaintiff points to the declaration and report of his expert witness, Captain Charles A. Jacobsen, who opines plaintiff's injury occurred "because of poor standard operating procedures and the failure to provide safe working conditions."  (Dkt. 35, ¶¶3, 4 and Ex. A.) Jacobsen describes the act of retrieving the towline as requiring plaintiff to balance "on an unsteady platform while standing on the coiled line," forcing plaintiff "to bend his knees and back in an unfavorable and unstable ergonomic lifting position."  (*Id*.)  He states that previously, under the charge of Collin, Sr., the crew of the F/V SPICY LADY hauled in the towline on the larger vessel and had the use of mechanical or hydraulic means, whereas Collin

Jr. required the lone skiffman to handle the towline in a skiff lacking a block, mechanical, or hydraulic mechanism to assist in the retrieval. (*Id*.) Jacobsen also asserts plaintiff was not instructed by his employers in correct lifting techniques. (*Id*., ¶5.)

Defendants, in reply, point to omissions of information in the report from Jacobsen, such as industry standards with respect to maximum lifting amounts or details as to the ergonomics involved in lifting the towline. Defendants also point to plaintiff's deposition testimony as contradicting the assertion that Collin, Sr. utilized a different method of retrieving the towline than that used by Collin, Jr. (Dkt. 39 (plaintiff testified that, in 2008, he manually retrieved the towline in a skiff while working under Collin, Sr.).) They further maintain that a seaman who merely points to safer methods or equipment, without showing the method or equipment used by the employer is unsafe, fails to demonstrate a lack of ordinary prudence or an unsafe method demonstrating unseaworthiness. *Salis v. L&M Botruc Rental, Inc.*, 400 F. App'x 900, 904 (5th Cir. 2010), and *Phillips v. Western Co. of N. Am.*, 953 F.2d 923, 928 (5th Cir. 1992).

Plaintiff here sets forth evidence, including an expert opinion and report, providing support for his claims and giving rise to potential material issues of fact precluding summary judgment. He does not rely merely on the fact of his injury or broad speculation as to negligence or unseaworthiness. *Cf. Salis*, 400 F. App'x at 903-04 ("As evidence, [plaintiff] notes that it would have been 'safer' to pass the water through the hatch to another crewman. He speculates that this 'could have prevented' his injury. This is insufficient to demonstrate negligence. The mere fact of an injury does not imply negligence. The bare existence of another transportation method by which Salis' particular injury might not have occurred, with

ORDER
PAGE -13

no additional citations or legal arguments, cannot demonstrate a lack of 'ordinary prudence' by L&M in allowing crewmen to transport the goods in that manner.")  Plaintiff, instead, offers his explanation as to how the facts in this case demonstrate negligence and unsafe methods amounting to unseaworthiness.

Defendants submit no contrary expert opinion evidence, and do not engage in any analysis of the facts.  Defendants further highlight some of the facts subject to dispute.  For instance, further reading of plaintiff's deposition testimony reveals his discussion of differences in towline retrieval methods employed by different boats in the industry, and differences in materials and methods used by Collin, Sr. and Collin, Jr., including that Collin, Sr. used a different diameter and length towline, with a different snap system, and "bridled up middle[,]" rather than hauling off the stern, the practice preferred by Collin, Jr.   (Dkt. 36-21 at 8-13.)

Given the above, the Court concludes defendants fail to demonstrate their entitlement to summary judgment on plaintiff's negligence and unseaworthiness claims.  At the least, the Court finds additional information necessary prior to consideration of the merits of these claims.  *Cf. Phillips*, 953 F.2d at 928-29 (upholding directed verdict on unseaworthiness claim, where evidence submitted at trial included testimony from both plaintiff and his expert refuting allegation that method of operation at issue was unsafe, and where expert testimony, at most, supported conclusion that "other and perhaps easier methods" existed).  S*ee also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770 (9th Cir. 1981) ("Courts should exercise special care in considering summary judgment in Jones Act cases which require a very low evidentiary threshold for submission to a jury.")

/ / /

## CONCLUSION

For the reasons discussed above, defendants' motion for partial summary judgment (Dkt. 26) is GRANTED in part and DENIED in part. Plaintiff's claims against Collin, Jr. are DISMISSED for the reasons discussed herein. However, defendants fail to demonstrate their entitlement to summary judgment in relation to maintenance provided during periods of plaintiff's other employment, or in relation to plaintiff's negligence and unseaworthiness claims.

DATED this 1st day of October, 2013.

*/s/ Mary Alice Theiler*
Mary Alice Theiler
Chief United States Magistrate Judge